T.C. Summary Opinion 2012-92

UNITED STATES TAX COURT

LORETTA LEA WANAT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 19944-07S, 19945-07S,     Filed September 17, 2012.
19946-07S.

Loretta Lea Wanat, pro se.

<u>Kristen I. Nygren</u> and Sebastian Voth (student), for respondent.

SUMMARY OPINION

CARLUZZO, <u>Special Trial Judge</u>: Each of these consolidated cases was

heard pursuant to the provisions of section 7463.[1] Pursuant to section 7463(b), the

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

decision to be entered in each case is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In three notices of deficiency, all dated June 4, 2007, respondent determined deficiencies in petitioner's income tax and additions to tax as follows:

|  |  | Additions to Tax | | |
|  |  | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6651(a)(2) | 6654(a) |
| 2002 | $16,573 | $1,629.45 | $1,738.08 | $207.35 |
| 2003 | 22,246 | 1,718.55 | 1,374.84 | 157.41 |
| 2004 | 22,316 | 1,510.65 | 805.68 | 144.56 |

This Summary Opinion addresses issues that do not arise from adjustments made in the notices of deficiency; those have been resolved by the parties.[2] Petitioner neither prepared nor submitted to respondent a Federal income tax return for any year in issue until shortly before these cases were tried. Had she done so earlier, we expect that the parties might have reached agreement on some of the deductions claimed on those returns. But she did not, so we do the best we

_____

[1](...continued)
Code of 1986, as amended, in effect for the relevant period. Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The parties also agree that petitioner's liability for the additions to tax for each year will be recomputed as necessary to reflect their agreement on the adjustments made in the notices of deficiency and the resolution of the issues here under consideration.

can with the disorganized record that we have been given to work with and consider petitioner's entitlement to certain deductions claimed on those returns.[3] Specifically, we consider: (1) whether for 2002 petitioner is entitled to trade or business expense deductions for expenses attributable to a dog bed manufacturing business; and (2) whether for 2003 and 2004 petitioner is entitled to trade or business expense deductions for expenses attributable to a real estate activity.

## Background

Some of the facts have been stipulated and are so found. At the time the petitions were filed in these consolidated cases, petitioner resided in Georgia.

From 1996 until 2005 petitioner was employed full time as an airline pilot by Northwest Airlines, Inc. (Northwest).

---

[3]Issues arising from deductions yet to be shown on a Federal income tax return are contemplated in the petitions filed in these cases. Ignoring what petitioner labeled as "preliminary" returns submitted to respondent's counsel after the petitions were filed, the returns on which the deductions here in dispute are claimed were not provided to respondent's counsel until the day before trial. Sometimes late is just as bad as never.

Petitioner's procrastination, coupled with respondent's restraint from using formal discovery in cases subject to a sec. 7463 election, in effect transformed one of the traditional roles of a trial, that is, to resolve factual disputes between litigants, into an exercise more in the nature of an examination of petitioner's untimely submitted returns. A trial even as informal as contemplated under Rule 174(b) is ill suited for such purposes.

From 2000 through 2002 petitioner was the sole proprietor of a business that manufactured dog beds. The dog beds, more simply described as cushions, were available in three sizes. Each bed consisted of an outer layer of cloth, webbing, and foam. Petitioner purchased these raw materials from various vendors. The cloth that composed the outer layer of the dog beds was cut to patterns and sewn together according to petitioner's specifications by a company in Georgia. The partially completed dog beds were then shipped to petitioner, who completed the manufacturing process and offered the beds for sale through the Internet.

Sometime during 2002 petitioner had a 40- by 60-foot cinder block building (building) constructed on her property where her residence is located. She used the building for a variety of purposes, including (1) storage for the raw materials, finished products, and equipment related to the manufacture of the dog beds, and (2) storage of equipment used in the maintenance of the property on which her residence in Georgia is located.

Over the years petitioner acquired several mostly unimproved parcels of real estate in the Florida Keys (properties). During the years in issue petitioner traveled, sometimes by automobile and sometimes by air, back and forth between her residence and one or the other of the properties. Petitioner purchased the properties

with an expectation to profit from their appreciation. One of the properties could be used as a fishing pier, and petitioner intended to hold it for rent for that purpose, although it does not appear that she did so for any of the years in issue. Petitioner intended to construct a "spec" house on another parcel, but she had not begun that process as of the close of 2004.

In 2003 petitioner entered into a contract to purchase an unimproved lot on Big Coppitt Key. According to petitioner, "the seller backed out of" the contract on "the day we were supposed to close." Petitioner retained an attorney to sue the seller over the contract dispute, and as of the time of trial in these cases, the dispute remained in litigation. Petitioner was reimbursed by her attorney (who she fired during 2005) for some, but not all, of the legal fees she incurred in that proceeding.

In 2004 petitioner purchased an unimproved lot in Seaside Resort. According to petitioner, she rented it "a couple of times" during that year to people who parked their recreational vehicles there. The 2004 Federal income tax return petitioner provided to respondent on the day before trial shows no rental income attributable to this or any other of the properties.

Each of the returns provided to respondent on the day before trial includes a Schedule C, Profit or Loss From Business. For 2002 the Schedule C relates to

petitioner's dog bed manufacturing business. For 2003 and 2004 the Schedules C

relate to petitioner's real estate activity; no income is reported on either of these

Schedules C. Otherwise, the income reported and deductions claimed on the three

Schedules C are shown in detail in the appendix.

## Discussion

As we have observed in countless opinions, deductions are a matter of

legislative grace, and the taxpayer bears the burden of proof to establish

entitlement to any claimed deduction.[4] Rule 142(a); INDOPCO, Inc. v.

Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292

U.S. 435, 440 (1934).

A taxpayer claiming a deduction to be taken into account in arriving at the

taxpayer's Federal income tax liability for any given year must demonstrate that

the deduction is allowable pursuant to some statutory provision and must further

substantiate that the expense to which the deduction relates has been paid or

incurred. See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975),

aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax

Regs. In these cases the "statutory provisions" are section 162, which, in general,

[4]Under the circumstances, the provisions of sec. 7491(a) are clearly not applicable.

allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, and section 212, which, in general, allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year for the management, conservation, or maintenance of property held for the production of income. Property held for the production of income includes property expected to appreciate over time, even though the property generates no current income. Sec. 1.212-1(b), Income Tax Regs.

Petitioner claims, and we agree, that expenses incurred during 2002 in carrying on her dog bed manufacturing business are deductible under section 162. Each deduction, of course, must be properly substantiated, and some are subject to limitations imposed by other sections of the Internal Revenue Code.

After careful consideration of the record, we find that, with two exceptions, petitioner is entitled to the deductions claimed on the Schedule C included with the 2002 Federal income tax return she provided to respondent's counsel on the day before trial. She is not entitled to a deduction for vehicle expenses because she did not substantiate by the use of a contemporaneous log or by any other reasonable means the number of miles traveled, the date, the place, and the business purpose of such travel as required by section 274 and its corresponding regulation. Also, she is not entitled to a depreciation and/or section 179 expense deduction because she did

not adequately distinguish between personal use and business use with respect to the items to which those deductions relate, and we have insufficient information to formulate a reasonable allocation between use that would allow for a deduction and use that would not. See sec. 262; Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Petitioner claims that expenses incurred during 2003 and 2004 are likewise deductible under section 162 and further takes the position that she was a taxpayer in a "real property business" within the meaning of section 469(c)(7). We disagree on both points. Petitioner's acquisition and/or holding of various parcels of essentially unimproved real estate during 2003 and 2004 does not constitute a trade or business, see Commissioner v. Groetzinger, 480 U.S. 23, 32, 35 (1987) (the taxpayer's real estate activity was hardly intended by her to be her "means of making a living" during either 2003 or 2004), and the record does not begin to allow for a quantitative analysis to determine whether the tests set forth in section 469(c)(7) have been satisfied (no specific evidence of time spent with respect to each parcel of real estate, or basis to compare that time to the time that she spent as a Northwest employee/pilot).

Nevertheless, we find that petitioner's real estate activity was conducted with the intent to make a profit and that she acquired or held the various parcels of real

estate for the production of income.  Consequently, we find that she is entitled by virtue of section 212 to certain of the deductions claimed on the Schedules C included with the 2003 and 2004 Federal income tax returns she provided to respondent's counsel on the day before trial.  As with deductions allowable under section 162, deductions otherwise allowable under section 212 must be substantiated by adequate records, and some are subject to limitations imposed by other provisions of the Internal Revenue Code.

Specifically for 2003 and 2004 we find that petitioner is entitled to deductions for advertising, interest (2004 only), and utilities, in the amounts shown on the Schedules C.  She is not entitled to a deduction for the legal expenses incurred in her unsuccessful attempt to acquire the unimproved lot on Big Coppitt Key during 2003.  Cf. sec. 1.212-1(k), Income Tax Regs.  Furthermore, since the depreciation deductions shown on the Schedules C do not relate to depreciable portions, if any, of the properties, she is not entitled to a depreciation deduction for either year.

Other deductions shown on the Schedules C relating to petitioner's real estate activity are not allowable because:  (1) petitioner failed to establish that the related expense was ordinary and necessary to her real estate activity, see sec. 1.212-1(a)(2), Income Tax Regs.; (2) petitioner failed to substantiate the amount claimed,

(3) the expenditure is capital in nature, <u>see</u> sec. 1.212-1(n), Income Tax Regs.; or

(4) the expense does not relate to one of the properties, but rather to a vehicle that she purchased during 2003.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.

APPENDIX

2002 Schedule C--Dog Bed Manufacturing Business

| Item | Amount |
|------|--------|
| Income: | |
| Gross receipts or sales | $3,950 |
| Cost of goods sold | 1,963 |
| Gross profit | 1,987 |
| Expenses: | |
| Car and truck | 662 |
| Depreciation and section 179 | 3,237 |
| Interest (Other) | 443 |
| Office | 171 |
| Rent or lease of vehicles, machinery, and equipment | 21 |
| Utilities | 346 |
| Other[1] | 465 |
| Net loss | (3,358) |

[1]The 2002 Schedule C reported other expenses of $465 composed of $215 for "Annual Web Hosting" and $250 for "Web Design Services".

## 2003 Schedule C--Real Estate Activity

| Item | Amount |
|------|--------|
| **Expenses:** | |
| Advertising | $323 |
| Depreciation and section 179 | 7,567 |
| Interest (Other) | 647 |
| Legal and professional services | 2,000 |
| Office | 246 |
| Rent or lease of vehicles, machinery, and equipment | 775 |
| Repairs and maintenance | 418 |
| Taxes and licenses | 151 |
| Travel | 619 |
| Meals and entertainment | 129 |
| Utilities | 375 |
| Net loss | (13,250) |

2004 Schedule C--Real Estate Activity

| Item | Amount |
|---|---|
| Expenses: | |
| Depreciation and section 179 | $11,980 |
| Interest (Other) | 1,235 |
| Office | 353 |
| Rent or lease of vehicles, machinery, and equipment | 453 |
| Repairs and maintenance | 150 |
| Taxes and licenses | 227 |
| Travel | 1,699 |
| Meals and entertainment | 163 |
| Other[1] | 175 |
| Net loss | (16,435) |

[1]The 2004 Schedule C reported other expenses of $172 composed of $150 for a "Vegetation Survey" and $25 for a subscription to "Realty Trac".